U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 AUG -1 AM 10: 50

CLERK

BY /AM/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANNE HAWLEY )
)
Plaintiff, )
)
v. ) Case No. 2:16-cv-00249
)
HANNAFORD BROS. CO. LLC, )
)
Defendant. )

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT JERRY BIRNBACH AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docs. 30 & 37)

Plaintiff Anne Hawley brings a negligence claim against Defendant Hannaford Bros. Co. LLC, alleging Defendant breached its duty to maintain its premises in a safe condition. Plaintiff claims her pant leg caught on a wire hook protruding from a floor display in the aisle of Defendant's Essex Junction, Vermont grocery store, causing her to fall and fracture her hip (the "incident"). Pending before the court is Defendant's motion to exclude Plaintiff's expert witness, Jerry Birnbach, (Doc. 37) and Defendant's motion for summary judgment. (Doc. 30.) On April 26, 2018, the court heard oral argument and took the pending motions under advisement.

Plaintiff is represented by Thomas J. Sherrer. Defendant is represented by Walter E. Judge, Jr., Esq., Jennifer E. McDonald, Esq., and Samantha V. Lednicky, Esq.

## I. Factual Background.

### A. Undisputed Facts.

On March 23, 2015, Plaintiff was a customer at Defendant's grocery store in Essex Junction, Vermont. At approximately 1:00 p.m., Plaintiff was walking through the store and pushing a grocery cart when she pulled over to the side of a shopping aisle and

stopped to check her grocery list. She was "totally aware" that on her right-hand side was a free-standing display of tuna fish, "aware enough that no part of [her] body ever touched it." (Doc. 31-1 at 8-9.) After checking her list, Plaintiff decided to return to another aisle. With her back to the tuna fish display, she took a step back and turned to her left. According to Defendant's Incident Report, upon turning to the left, Plaintiff "[caught] her right pant leg on [a] hook" located at the base of the wire display, and she fell to the floor, landing on her left side. (Doc. 36-4 at 2.) Plaintiff suffered a left femoral neck hip fracture which required a left total hip arthroplasty.

The display rack at issue was a spider rack with hooks manufactured by non-party Sam Pievac Company. Plaintiff's expert witness, Jerry Birnbach, testified that the Sam Pievac Company has a "[g]ood[]" reputation. (Doc. 31-2 at 4.) Prior to this case, he had not seen a spider rack or a similar rack. He is not aware of any other complaints concerning spider racks.

Prior to the incident, Defendant "changed what [it] order[ed] [in 2010] so that [the display racks] can connect together." (Doc. 36-14 at 3.) Defendant sought out and obtained spider racks with hooks in order to join multiple display racks together such that "if they got hit they would not separate and the product would not fall." (Doc. 36-15 at 3.) There are no written instructions on the use of the spider rack with hooks. None of Defendant's other display racks have hooks.

Although Defendant has used spider racks for over forty-five years, Defendant did not use the spider rack with hooks until 2010 or 2011.[1] Since then, its grocery stores have used both spider racks with and without hooks. For example, Defendant's South Burlington, Vermont location, as of February 1, 2018, had thirty-four spider rack displays. Four of those spider racks had hooks; thirty did not.

---

[1] Defendant's then-manager of merchandising for center store, John Raymond, testified that he thought the use of spider racks with hooks "[went] back to 2011[.]" (Doc. 36-16 at 5.) Defendant's equipment coordinator, Norman Moody, however, believed Defendant started ordering spider racks with hooks in 2010.

2

The spider rack with hooks is a rectangular wire rack used as a base for stacking boxes of merchandise. Located on the sides of the rack are four "receivers" and four "hooks" which connect the racks together to form a larger display.[2] There are two sides with two hooks each and two sides with two receivers each. The hooks are attached to the display base, shaped in an "L," and point downward. There is no so-called "end unit[]" rack without hooks. (Doc. 31-2 at 7) (internal quotation marks omitted).

At the time of the incident, Defendant used the spider rack with hooks as a single, free-standing aisle display.[3] The spider rack at issue was set up in accordance with Defendant's store policy. The "In-Aisle Merchandising" chapter of Defendant's "Store Visual Merchandising Guide" depicts spider rack with hooks being used in the singular application in accordance with Defendant's training aids. The "In-Aisle Merchandising" chapter, however, does not contain guidance as to how spider racks with hooks should be used.

Defendant's "Standard Practice Training Aid" for "Merchandising In Aisle Displays" states that the purpose of in-aisle displays is "to effectively merchandise [and] to drive impulse sales[.]" (Doc. 36-18 at 1.) Consistent with that purpose, the Training Aid states that display racks should be placed on the floor facing the flow of the customers. In-aisle displays should be placed twenty feet apart, face the back of the store on every odd-numbered aisle and the front on every even-numbered aisle, and set up at an angle to allow the customer to access the shelf behind the display. Defendant's assistant store manager, Kenneth Goulette, walked through the aisles throughout the day to ensure that each display was properly set up.

---

[2] According to Defendant, the hooks protrude 0.47 inches from the base of the display. The CAD specifications Defendant cites in support of this fact, however, do not contain this measurement.

[3] Defendant's store manager, Curt Echo, agreed that a spider rack with hooks can be used in "modular form that can be connected together" and "in single application[.]" (Doc. 31-4 at 6.) Similarly, Kenneth Goulette, Defendant's assistant store manager, stated that the spider rack was designed "to put two together[,] to lock them, or [for] single[]" use. (Doc. 31-3 at 4.)

Although there were no other reported incidents related to spider racks at Defendant's grocery stores, Defendant's representatives acknowledged that it is "common[]" for customers to bump into racks, (Doc. 36-16 at 2), and "whether [it is] slip and falls or somebody just tripping over their feet[,]" in the grocery business, these types of incidents "happen[] all the time." (Doc. 36-13 at 2.) Defendant's Health and Safety Standard Practice identifies "protruding object hazards" as an example of an unsafe condition in its stores. (Doc. 36-25 at 4.)

### B. Disputed Facts.

The parties dispute whether the hooks on the spider rack were protruding into the aisle. Defendant relies on the testimony of its store manager, Curt Echo, who claimed that the hooks were not protruding into the aisle and that the store did not have a policy as to which side of the rack, the side with hooks or the side with receivers, should face the customer. In contrast, Plaintiff's expert, Mr. Birnbach, opined that the hooks do protrude into the aisle. In addition, Defendant's own statement of undisputed facts asserts that the wire hooks protrude 0.47 inches from the display base.

The parties further dispute the extent to which the spider rack with hooks was visible to Plaintiff when the incident occurred. Defendant points out that Plaintiff saw the display when she walked down the aisle, that there was nothing blocking her view of the display, and that the display was not in the middle of the aisle. Plaintiff does not dispute that she was aware of the display before she fell, but avers that she was unaware of the wire hooks at the base of the display. She testified in deposition that she "could feel [herself] falling" and she "looked down and [her] corduroys were caught . . . on that [display] rack and [she] couldn't see what had them." (Doc. 31-1 at 4.) After she fell, Plaintiff slid her legs along the aisle until she was leaning against the grocery store shelves for support. She then looked over at the display rack and "noticed down at the bottom of [it] there were hooks[,]" at which point she thought those hooks were "what [her] pants were caught on" when she fell. *Id.* at 5. Defendant's employee, John Raymond, testified that he "doubt[ed]" that the average customer "look[s] down there[,]"

4

meaning towards the base of the display where the spider rack hooks are located. (Doc. 36-16 at 4.)

Defendant asserts that spider racks with hooks do not pose any potentially dangerous condition for customers. Defendant's representative admitted that there could be differences of opinion with regard to this issue, and another employee stated that he could not reach a conclusion on this issue.

## II. Conclusions of Law and Analysis.

### A. Whether Jerry Birnbach's Expert Testimony Should be Excluded.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendant moves to exclude Mr. Birnbach's expert testimony. Plaintiff argues that Defendant's motion should be denied because Defendant filed its motion "more than two months past the motion deadline." (Doc. 39 at 2-3.) The Second Amended Stipulated Discovery Schedule (the "Discovery Schedule") states that "[m]otions, including summary judgment motions but excluding motions relating to the conduct of the trial, shall be filed on or before December 30, 2017." (Doc. 24 at 2, ¶ 9) (emphasis omitted). Because Defendant's motion seeks to exclude expert testimony that would be presented at trial, it is not subject to the Discovery Schedule's December 30, 2017 motion deadline. Defendant's motion to exclude Mr. Birnbach's testimony is therefore not untimely.

Because the court must "decide questions regarding the admissibility of evidence" in order to resolve Defendant's motion for summary judgment, it must first consider whether Mr. Birnbach's expert opinions are admissible. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *see also Foley v. United States*, 294 F. Supp. 3d 83, 91 (W.D.N.Y. 2018) ("Thus, the Court will first determine the admissibility of [the plaintiff's] Expert Report prior to determining the merits of the [defendant]'s summary judgment motion."). Plaintiff asserts that Mr. Birnbach properly relied on his experience in retail display design in forming his opinions regarding the safety of the spider rack with hooks. Defendant challenges the admissibility of Mr. Birnbach's opinion on a number of grounds.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court functions as the gatekeeper for expert testimony, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing *Daubert*, 509 U.S. at 597).

In determining the reliability of expert testimony, the court engages in "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Under *Daubert* and its progeny, relevant factors include the theory's testability, the extent to which it "has been subjected to peer review and publication[,]" the extent to which a technique is subject to "standards controlling the technique's operation," the "known or potential rate of error," and the "degree of acceptance" within the 'relevant scientific community.'" *Id.* at 593-94. "[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Restivo v. Hessemann*, 846 F.3d 547, 576 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)).

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266. The court has "broad latitude when it decides *how* to determine reliability as it enjoys with respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 142 (emphasis in original); *see also Restivo*, 846 F.3d at 575 ("Thus, in analyzing the admissibility of

6

expert evidence, the district court has broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case.") (internal quotation marks omitted).

Admissible testimony under Rule 702 may still be excluded under Federal Rule of Evidence 403, which authorizes the exclusion of relevant evidence when its "probative value is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotation marks omitted).

### 1.     Whether Mr. Birnbach is Qualified as an Expert Witness.

Whether a witness is qualified as an expert by his or her knowledge, skill, experience, training, or education is a "threshold question" that the court must resolve before determining whether his or her opinions are admissible. *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). The "qualification of experts pursuant to Federal Rule of Evidence 702 is in the broad discretion of the district court." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997). Plaintiff offers Mr. Birnbach as an expert in retail design. Although not explicitly challenging Mr. Birnbach's qualifications, Defendant points out that Mr. Birnbach had not seen a spider rack with hooks or a similar rack prior to his involvement in this case.

Since 1970, Mr. Birnbach has worked in the retail industry with previous experience as a director of store planning and vice president of store design and display. He operates his own consulting business specializing in retail design and display, and his previous clients include Macy's, Walmart, Kmart, Sears, JC Penny's, Walgreens, CVS, Ben & Jerry's, and FedEx. In the past six years, Mr. Birnbach served as an expert witness in over eighty premises liability cases, some of which have involved supermarkets and displays, for both plaintiffs and defendants. Based on these

experiences, the court finds Mr. Birnbach qualified to testify as an expert in retail design at the summary judgment phase.

## 2. Whether Mr. Birnbach's Expert Opinions are Admissible.

In moving to exclude Mr. Birnbach's opinions, Defendant asserts that he cannot opine that the display rack presented a "foreseeable hazard" because the jury can reach this conclusion without the aid of expert testimony.[4] Rule 702 provides that an expert may testify when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). An expert opinion is unhelpful and inadmissible if it "would merely tell the jury what result to reach." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (internal quotation marks omitted) (citing Fed. R. Evid. 704 Advisory Committee Note). It is equally inadmissible if it deals with matters within "the ken of the average juror." *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991); *see also United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (stating that an expert's testimony cannot "usurp . . . the role of the jury in applying that law to the facts before it.") (internal quotation marks omitted).

Mr. Birnbach opined that Defendant should have known that the hooks posed a "foreseeable" risk because they "could trap a customer's clothing and cause a tripping condition[.]" (Doc. 37-2 at 2, ¶ 5.) He further concluded that the "danger and hazard" posed by the hooks "was not obvious to the consumer." *Id.* at 2, ¶ 9. A jury is capable of reaching these conclusions "without [an] expert's help." *Andrews v. Metro N. Commuter*

---

[4] Defendant also moved to exclude Mr. Birnbach's opinions that the spider rack with hooks "does not conform to Industry Standard" and that its use created a "code violation[,]" arguing that he did not provide any supporting evidence establishing industry safety standards for retail display racks. (Doc. 37-2 at 1-2, ¶¶ 1, 4.) At oral argument, Plaintiff conceded that she will not seek to introduce Mr. Birnbach's opinions regarding industry standards. The court therefore excludes Mr. Birnbach's opinions that the spider rack with hooks does not conform to an industry standard and his further opinion that its use constituted a code violation. *See Yazujian v. PetSmart*, 2018 WL 1830931, at *2 (3d Cir. Apr. 17, 2018) (affirming district court's exclusion of a retail safety expert's testimony because, in part, the expert "conceded that there are no formal industry standards in the area of retail safety" and "offer[ed] an opinion . . . of what the best industry practices were[] based on a review of unspecified retail manuals.").

8

*R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("[E]xpert testimony is unnecessary in cases where jurors are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.") (internal quotations and citations omitted). Moreover, these opinions "merely tell the jury what result to reach" as to whether Defendant was negligent. *Rea*, 958 F.2d at 1215. The court therefore excludes Mr. Birnbach's opinions that Defendant should have known that the hooks posed a foreseeable risk and were not obvious to the consumer.

In contrast, Mr. Birnbach's opinion that Defendant should not have used the spider rack with hooks as a stand-alone display rack does not pose the same relevance concerns. Although "any layperson can understand that protruding objects present a tripping hazard, [Mr. Birnbach] could assist the jury by drawing on his experience to assess the often subtle safety implications" of using the stand-alone spider rack with hooks. *Wisdom v. TJX Companies, Inc.*, 410 F. Supp. 2d 336, 341 (D. Vt. 2006). Noting its interlocking hooks and receivers, Mr. Birnbach opined that the spider rack with hooks is designed to connect multiple units and does not adequately function as a stand-alone display. He further opined that the hooks were located near floor level and that the "contrast of the silver metal base [of the spider rack] over the VCT tile, also a similar silver tile color, made it difficult to differentiate that the hook actually existed" (Doc. 37-2 at 1, ¶ 3) and that "the clean 90-degree cut on the bottom of the hook increased the likelihood of clothing getting caught in the hook." *Id.* at 2, ¶ 7. As a result, "the existence of the hook; the position of the hook; the fact it was visually blocked by the product; . . . and the location at floor level[] . . . caused the hook to be hidden from the consumer." *Id.* at 2, ¶ 9.

The type of opinion Mr. Birnbach offered is not one with regard to which there is a known error rate, is subject to testing, or is likely to be subject to peer review. Mr. Birnbach nonetheless provided reliable principles and sufficient facts for his opinion and offered an opinion that may help the trier of fact understand the evidence or determine a fact in issue. His opinion that Defendant should not have used the spider rack with hooks

as a stand-alone display is therefore admissible under Fed. R. Evid. 702. Because its relevance is not substantially outweighed by any danger of unfair prejudice, this opinion is also admissible under Fed. R. Evid. 403.

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendant's motion to exclude Mr. Birnbach's testimony. Mr. Birnbach's opinions that Defendant should have known that the hooks posed a foreseeable risk and that they did not present an obvious hazard to the consumer are excluded. Mr. Birnbach may testify as to whether Defendant should have used the spider rack with hooks in the manner at issue in this case and whether that use posed a hidden hazard for the consumer.

### B. Whether Defendant is Entitled to Summary Judgment.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman*

*v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

Plaintiff asserts a negligence claim pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332. As a result, Vermont's substantive law governs her claim. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005) ("In a diversity case [federal courts] apply the substantive law of the forum state").

### C. Whether Defendant Owed Plaintiff a Duty of Care.

As an initial matter, Defendant characterizes Plaintiff's theory of liability as a products liability claim predicated on the allegedly defective design of the spider rack with hooks. Because it was neither the manufacturer nor the seller of the spider rack with hooks, Defendant argues Plaintiff's claim must be dismissed as a matter of law. This argument, which is the fulcrum of Defendant's summary judgment motion, misrepresents Plaintiff's claim. Plaintiff alleges a premises liability claim based on Defendant's "duty to maintain its premises in a safe condition." (Doc. 36-23 at 1, ¶ 7.) Plaintiff's negligence claim thus cannot be dismissed on the basis that Defendant is not the manufacturer or seller of the spider rack with hooks.

To prevail on a negligence claim under Vermont law, Plaintiff must demonstrate that Defendant owed "a legal duty, that [it] breached that duty, that the breach was the proximate cause of [Plaintiff's] injury and that [Plaintiff] suffered actual loss or damage." *Endres v. Endres*, 2008 VT 124, ¶ 11, 185 Vt. 63, 67, 968 A.2d 336, 340 (citing *O'Connell v. Killington, Ltd.*, 665 A.2d 39, 42 (Vt. 1995)). Under Vermont law,

11

"whether a duty is owed is primarily a legal question" for the court. *LeClair v. LeClair*, 2017 VT 34, ¶ 10, 169 A.3d 743, 747; *see also Spooner v. Todd Transp. Co.*, 2018 WL 1281788, at *5 (D. Vt. Mar. 9, 2018) ("The existence of a duty is generally a question of law that may be determined prior to trial if the relevant facts are undisputed.") (citing *Endres*, 2008 VT 124, ¶ 11).

Defendant has a "duty to keep [its] premises in a safe and suitable condition, so that [its] business invitees would not be unnecessarily or unreasonably exposed to danger." *Forcier v. Grand Union Stores, Inc.*, 264 A.2d 796, 799 (Vt. 1970); *see also Wisdom*, 410 F. Supp. 2d at 344 ("[The defendant store owner] acknowledges that as a business owner, it has a "duty to keep its premises in a safe and suitable condition, so that its business invitees would not be unnecessarily or unreasonably exposed to danger.") (alterations omitted). Defendant nonetheless contends that the spider rack with hooks presented an open and obvious danger and, if not, that it was not reasonably foreseeable that Plaintiff would catch her pant leg on a hook.

In *LeClair v. LeClair*, the Vermont Supreme Court held that a "premises liability theory" should be examined "under § 343 of the Restatement (Second) of Torts[.]" 2017 VT 34, ¶ 11 (footnote omitted). Under section 343 of the Restatement:

> a possessor of land is liable for physical harm caused to his invitees by a condition on the land if the possessor satisfies three requirements: (1) knows or should know that the condition presents an unreasonable risk of harm to invitees; (2) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (3) does not exercise reasonable care to protect the invitees from the danger.

*Id.* (internal quotation marks, footnote, and emphasis omitted).

*LeClair* emphasized that section 343 must be "read together" with section 343A of the Restatement. *Id.* at ¶ 12 (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. a). Section 343A provides, in relevant part, that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless* the possessor should anticipate the harm

despite such knowledge or obviousness." *Id.* (emphasis in original). Comment (a) to section 343 explains that section 343A "limits the liability . . . stated" in section 343. *Id.*

Under the first prong of *LeClair*, Plaintiff must establish that Defendant knew or should have known that the stand-alone spider rack with hooks "present[ed] an unreasonable risk of harm" to its customers. *LeClair*, 2017 VT 34, ¶ 11. To that end, Defendant's own Health and Safety Standard Practice identifies "protruding object hazards" as an example of an unsafe condition in its stores. (Doc. 36-25 at 4.) In addition, Defendant's representatives concede that bumping into display racks is "common[]" (Doc. 36-16 at 2) and that "whether [it is] slip and falls or somebody just tripping over their feet[,]" in the grocery business, these types of incidents "happen[] all the time." (Doc. 36-13 at 2.) Indeed, Defendant used spider racks with hooks in order to join display racks together so that "if they got hit they would not separate and the product would not fall." (Doc. 36-15 at 3.)

Defendant points out that there have been no other reported incidents involving spider racks with hooks since it began using this display rack in 2010 or 2011. *See Bazzano v. Killington Country Vill., Inc.*, 2003 VT 46, ¶ 6, 175 Vt. 534, 535, 830 A.2d 24, 27 (2003) (holding that "the absence of prior accidents was relevant and admissible to show an absence of the defect or condition alleged.") (citing *Mobbs v. Central Vt. Ry.*, 583 A.2d 566, 575 (Vt. 1990)). While Defendant's store manager, Curt Echo, testified that the wire hooks were not protruding into the aisle, Defendant's own statement of material facts states that the hooks protruded approximately half an inch from the display base. It is, however, for "the jury to say whether the interior arrangements of the store as evidence before them represented circumstances likely to deceive a reasonable [person], even if not obviously dangerous, to the point of representing some negligence with respect to customer safety." *Shea v. Peter Glenn Shops, Inc.*, 318 A.2d 177, 178 (Vt. 1974).

The court cannot resolve whether Defendant knew or should have known that the stand-alone spider rack with hooks posed an unreasonable risk of harm because to do so would require it to weigh the evidence and judge the credibility of the witnesses. *See*

13

*Proctor*, 846 F.3d at 608 (ruling that "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (internal quotation marks omitted). Because "reasonable minds can[] differ as to the import of the evidence before the court[,]" Defendant is not entitled to judgment as a matter of law on the first prong of the *LeClair* standard. *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993).

With regard to the second prong of *LeClair*, Plaintiff must establish that Defendant reasonably should have expected that its customers "will not discover or realize the danger, or will fail to protect themselves against it, . . . particularly whether [the] defendant, under the circumstances, should have expected that [the] plaintiff would not protect himself from the danger that was open and obvious to both of them." *LeClair*, 2017 VT 34, ¶ 11 (emphasis omitted). "Reasonable care on the part of the possessor . . . does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." *Spooner*, 2018 WL 1281788, at *6 (citing *LeClair*, 2017 VT 34, ¶ 12) (internal quotation marks omitted).

Although duty is primarily a question of law, there is still "a role for a jury in determining the obviousness of the [condition at issue][.]" *Wisdom*, 410 F. Supp. 2d at 346; *see also Spooner*, 2018 WL 1281788, at *7 (collecting cases in which courts applying sections 343 and 343A concluded that the obviousness of the danger is a question for the trier of fact).[5] "If there is a genuine issue of material fact as to what the defendant could or could not anticipate, or whether it was reasonable to expect the

---

[5] Other states have adopted a similar approach. *See, e.g., Quinn v. Morganelli*, 895 N.E.2d 507, 510 (Mass. App. Ct. 2008) ("A jury also would be warranted in finding that this was not a case of 'open and obvious' danger"); *Fleming v. Garnett*, 646 A.2d 1308, 1313 (Conn. 1994) ("It was proper, therefore, for the trial court to have left the resolution of [the obviousness of the danger] to the jury"); *Ward v. K Mart Corp.*, 554 N.E.2d 223, 234 (Ill. 1990) ("Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact").

defendant to protect an invitee from his or her own lack of care, a finder of fact must generally resolve those questions." *Spooner*, 2018 WL 1281788, at *7.

In this case, Plaintiff testified that although she was aware of the display before she fell, she was unaware of the wire hooks at the base of the display. Defendant's employee concurred that the average customer does not look at the base of the display where the hooks are located. Mr. Birnbach concluded that the existence and position of the hooks, the fact that the hooks were visually blocked by the product, their location at floor level, and the lack of contrast with the floor color "caused the hook to be hidden from the consumer." (Doc. 37-2 at 2, ¶ 9.) A jury could deem this sufficient evidence that a customer could not reasonably be expected to protect himself or herself from this hazard.[6]

The remaining question is whether Defendant "exercised reasonable care to protect the invitees from the danger." *LeClair*, 2017 VT 34, ¶ 11. This, too, is a question for the jury to determine. *See State Farm Mut. Auto. Ins. Co. v. Colby*, 2013 VT 80, ¶ 32, 194 Vt. 532, 545, 82 A.3d 1174, 1184 (2013) ("The question of reasonableness is ordinarily for the factfinder."); *Morway v. Trombly*, 789 A.2d 965, 971 (Vt. 2001) ("Particularly where there is no settled rule of diligence more specific than a general reasonableness standard, 'negligence is ordinarily a question for the jury.'") (quoting *Baisley v. Missisquoi Cemetery Ass'n*, 708 A.2d 924, 928 (Vt. 1998)).

In the light most favorable to the nonmoving party, Plaintiff has adduced sufficient evidence to raise genuine questions of material fact regarding whether Defendant knew or should have known that the stand-alone spider rack with hooks presented an unreasonable

---

[6] *See Ainsworth v. Chandler*, 2014 VT 107, ¶ 12, 197 Vt. 541, 547, 107 A.3d 905, 909 (2014) (noting that "a reasonable jury could conclude that either the danger was not open and obvious or that defendant should have foreseen the harm even if the danger was obvious."); *Wisdom v. TJX Companies, Inc.*, 410 F. Supp. 2d 336, 345 (D. Vt. 2006). ("[R]egardless of whether the rack suffered a defect in design or manufacture, there is evidence from which a jury could infer that it was used in a non-obvious and negligent manner."); *see also Randolph v. Forever 21, Inc.*, 2017 WL 2901330, at *5 (S.D. Ind. June 6, 2017) (denying summary judgment, in part, because "a reasonable jury could find that the outward-facing, protruding wheel was not an 'obvious' danger to a shopper purposely focused on the merchandise on the top of the table.").

risk of harm to customers; whether the danger was open and obvious; and whether Defendant exercised reasonable care to protect its customers from the danger. Summary judgment in Defendant's favor must therefore be DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendant's motion to exclude Plaintiff's expert, Jerry Birnbach, (Doc. 37) and DENIES Defendant's motion for summary judgment. (Doc. 30.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 31st day of July, 2018.

Christina Reiss, District Judge
United States District Court